**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SUNDRAM FASTENERS LIMITED,

        Plaintiff,

v.                                           Case Number: 08-CV-13103

FLEXITECH, INC.,

        Defendant.

                                      /

**OPINION AND ORDER DENYING DEFENDANT'S
"MOTION FOR SUMMARY JUDGMENT"**

Pending before the court is Defendant Flexitech, Inc.'s "Motion for Summary

Judgment," filed on June 15, 2009. The matter has been fully briefed, and the court

concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For

the reasons stated below, Plaintiff's motion will be denied.

**I. BACKGROUND**

Defendant, headquartered in Plymouth, Michigan, is a manufacturer of brake

hose assemblies and oil coolers, primarily for the automotive industry. (Pl.'s Resp. at

viii.) Plaintiff Sundram Fasteners is an Indian company and the "largest manufacturer of

high tensile fasteners in India." (*Id.*) In November of 2005, Defendant, through an

intermediary, sought a supply of fasteners to be used in the production of brake

assemblies for end use by General Motors Corporation. (*Id.* at ix.) Defendant and

Plaintiff communicated via a series of emails and discussed the pricing for two specific

types of these fasteners, known as "banjo bolts." (*Id.*) Defendant was interested in

price quotes for part numbers 36-75003 ("03-bolt") and 36-75004 ("04-bolt"). As a result

of these emails and at least one telephone conversation, Plaintiff emailed Defendant's buyer with a price quote of $0.275 for an expected annual volume of 4.5 million for the 03-bolt, and a quote of $0.300 for an expected annual volume of 1.6 million of the 04-bolt.  (*Id.* at x-xi.)

On March 8, 2006, Defendant issued a "Blanket Purchase Order" to Plaintiff, which listed the quoted prices for the 03- and 04-bolts and required Plaintiff to "submit 300 parts with PPAP paperwork to the attention of . . . [the] Quality Manager at [Defendant] by due date."[1]  (*Id.*, Ex. B(3) at 3.)  The blanket purchase order also included extensive terms and conditions, including that Defendant "may terminate the Blanket Purchase Order in whole or in part at any time, for any reason, without penalty." (*Id.*)  Plaintiff did not contest this or any other clause in the order (*id.* at xv-xvii) and, upon receiving a "release" from Defendant in March of 2006, began to manufacturer and ship the 03- and 04-bolts to Defendant (*id.* at xxiv, Ex. B(5)).

In September of 2006, Defendant sent Plaintiff a forecast of its anticipated needs of the bolts for the remainder of 2006 and all of 2007.  (*Id.*, Ex. B(10).)  The forecast called for hundreds of thousands of both the 03- and 04-bolts to be manufactured and shipped in the near future.  (*Id.*)  At the time of the forecasts, however, Defendant informed Plaintiff that the forecasts were just that, and would "be followed by firm releases which [Plaintiff] should ship to."  (Def.'s Mot., Ex. 11.)  Defendant sent a release to Plaintiff in January of 2007, but did not send any further releases for bolt

---

[1]  The parties do not define PPAP.  From the context of the argument, however, it appears this initial order for three-hundred pieces was intended for Defendant to perform an inspection of the parts, before "releases" were communicated from Defendant to Plaintiff for larger quantities to be shipped.  (Pl.'s Resp. at xii-xiii.)

2

shipment.  (Pl.'s Resp. at xxiv.)  After receiving no releases for approximately one

month, Plaintiff sent Defendant numerous emails seeking to confirm the upcoming

shipment schedule.  (*Id.*, Exs. B(12), (13).)  Finally, on March 23, 2007, Defendant's

buyer responded to Plaintiff's inquiries, stating that Defendant "will no longer require this

part from you."  (*Id.*, Ex. B(14).)  Defendant followed this email with a March 29, 2007

letter in which Defendant elaborated:

> Due to the fact that [Plaintiff] failed [Defendant's] quality evaluation and having
> received two quality SCARs.[2]  [Defendant] will no longer require this part from
> [Plaintiff]; this action is necessary to protect [Defendant] and our customer from
> any quality issues.
>
> [Plaintiff's] last release from [Defendant] was on January 3, 2007 and has not
> received any additional releases.  Please be aware that [Defendant] has no
> contractual obligation to [Plaintiff] at this time as your Purchase Order is based
> on firm releases from [Defendant].

(Def.'s Mot., Ex. 17.)  Defendant continued to accept and pay for shipments of bolts

which had been requested via releases prior to its March 29, 2007 letter.  (Pl.'s Resp. at

xvi - xvii.)  At the end of March of 2007, there were no outstanding releases, and

Defendant terminated the relationship.  (*Id.* at xvii.)  There were, however,

approximately 2.2 million bolts which Plaintiff had manufactured but not yet shipped to

Defendant, as a firm release for those bolts had not been issued.  (Pl.'s Compl. at ¶ 22.)

    In July of 2008, Plaintiff filed the current lawsuit, alleging that Defendant

breached its contractual duty by (1) refusing to compensate Plaintiff for the 2.2 million

---

    [2] SCAR stands for "Supplier Corrective Action Request" and is Defendant's process
for alerting suppliers of defective products.  (Pl.'s Resp., Ex. C(1).)  In October of 2006,
Plaintiff received a SCAR for an 04-bolt on which "flow through holes [did] not intersect."
(*Id.*)  In January of 2007, Plaintiff received a SCAR for an 04-bolt that did "not meet print
specifications" because it would "not pass [Defendant's] ring thread gage."  (*Id.*, Ex. C(5).)

bolts left in the supply chain upon contract termination, and (2) not providing releases for the total number of bolts negotiated before the initial blanket purchase order. (*Id.* at 4-5.) Defendant filed its motion for summary judgment arguing that the parties contract was in the form of a blanket purchase order which including specific termination language. The agreed-upon contract did not require Defendant to compensate Plaintiff for any product specifically not "released," and allowed Defendant to terminate the agreement at any time, with no advance notice. (Def.'s Mot. at 5-7.) Plaintiff counters that a genuine issue of material fact exists as to whether the blanket purchase order constitutes a valid contract. (Pl.'s Resp. at 7-8.) Further, Plaintiff avers that, even if the blanket purchase order constituted a contract between the parties, Defendant did not provide valid notice of its intent to terminate the contract and thus, the termination was unreasonable. (*Id.* at 8-16.)

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is

4

appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986). The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original)(citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

5

## III.  DISCUSSION

### A.  Blanket Purchase Order as Contract

Though not raised in Defendant's motion, Plaintiff contests whether the blanket purchase order applies to the dispute between these parties, as the purchase order number listed on the blanket order, "P3612327" does not match the purchase order number listed on subsequent releases.  (Pl.'s Resp. at 7.)  In the manufacturing industry, the term "blanket purchase order" "has a particular trade meaning: namely, a non-binding *estimate* of the buyer's requirements."  *Detroit Radiant Prod. Co. v. BSH Home Appliances Corp.*, 473 F.3d 623, 631 (6th Cir. 2007) (emphasis in original).  Specifically, and under Michigan law,[3]

> A blanket purchase order does not oblige [the seller] to manufacture or ship any parts.  That obligation arises when [the buyer] issues what is known as a shipment, production, or release order that would issue against the blanket purchase order.  Blanket purchase orders can last for some time, while shipment orders are issued against them.

*Id.* (quoting *Urban Assoc., Inc. v. Standex Elec., Inc.*, No. 04-40059, 2006 WL 250020, *1 (E.D. Mich. Jan. 30, 2006)); *see also Robich v. Patent Button Co. of Tenn., Inc.*, 417 F.2d 890, 891 (6th Cir. 1969).  Indeed, Plaintiff's employees, in negotiating the sale of the 03- and 04-bolts, demonstrated a general awareness of blanket purchase orders' function as sales contracts.  (Def.'s Mot., Ex. 5 at p. 46; Ex. 6 at p. 82.)  Defendant issued releases to Plaintiff from March 2006 until January 2007.  (Pl.'s Resp. at xxiv.)  And although the purchase order number listed on Defendant's releases did not, at least in some instances, match the purchase order number on the original blanket purchase

---

[3]  Plaintiff does not contest that any contract at issue in this dispute, based on diversity of citizenship, is governed by Michigan law.

order, Plaintiff does not claim it had any trouble determining what products were to be
shipped, or what price the parties had agreed upon for those products.  In fact, the
examples of releases provided to the court are silent as to price information, and
instead include only the "Item Number" and a "Quantity Amount."  (Pl.'s Resp., Ex.
A(3).)  Thus, without reference to the original blanket purchase order, Plaintiff would
have been shipping its products to Defendant without knowing what price would be paid.
Plaintiff's argument that there is a "factual dispute as to whether [the blanket] purchase
order, a different purchase order, or no purchase order at all" was intended to control
these transactions is inconsistent with Plaintiff's employee's words and actions in
shipping the 03- and 04-bolts.  To imply that, because of a minor typo that was
apparently not noticed until the commencement of this litigation, there is now a "different
purchase order, or no purchase order at all" governing these significant shipments does
little more than "show that there is some metaphysical doubt as to the material facts,"
*Matsushita Elec. Indus. Co.*, 475 U.S. at 586, and is insufficient to establish a triable
issue of material fact as to the legitimacy of the blanket purchase agreement agreed
upon by Plaintiff and Defendant.

Plaintiff also argues that, by the blanket purchase order's explicit terms, it was
never properly accepted and thus did not govern the sale of the bolts to Defendant.
Among the terms and conditions in the blanket purchase order is a section entitled
"Acceptance."  (Def.'s Mot., Ex. 8 at 3.)  In pertinent part, the section states that:

> Acknowledgment by Seller of its receipt of this order, shipment by Seller of such
> goods as are subject to this order or performance by Seller of such work as is
> subject to this order shall constitute acceptance by Seller . . . Acceptance of this

7

> order must be acknowledged by Purchaser's receipt of the executed
> acknowledgment copy of this order within three (3) business days of the date of
> this purchase order first set forth above.

(*Id.*)  In simpler terms, and giving the words their "ordinary and common sense

meaning," *Robich*, 417 F.2d at 892, Plaintiff was able to accept the contract through: (1)

an acknowledgment copy of the order within three business days of receipt, (2)

shipment of the goods referenced in the order, or – inapplicable here – (3)

commencement of labor referenced in the order.

Plaintiff argues that, because its employees never sent an executed

acknowledgment copy of the order, it was not accepted.  From the plain language of the

instrument, Plaintiff properly accepted the agreement when it first shipped the goods

referenced in the order, namely, the 03- and 04-bolts.  Regardless, however, "[i]f an

offer suggests a permitted mode of acceptance, other methods of acceptance are not

precluded."  *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp. 2d. 709, 714 (E.D.

Mich. 1999) (citing *Allied Steel & Conveyors v. Ford Motor Co.*, 277 F.2d 907, 910-11

(6th Cir. 1960)).  "One such manner of acceptance occurs when the offeree tenders

performance."  *Kvaerner*, 74 F. Supp. 2d at 714.  Plaintiff does not dispute that it

shipped Defendant the bolts requested via releases for nearly one year, and that

Defendant paid for the released shipments.  Thus, when Plaintiff sent its first shipment

in March of 2006, by the act of tendering performance, it accepted the terms of

Defendant's blanket purchase order.  *Id.*  The fact that Plaintiff did not choose one of

multiple methods of acceptance listed in the purchase order does not create a genuine

issue of material fact as to whether Plaintiff accepted the blanket purchase order and its

incorporated terms and conditions.

8

## B.  Timing and Notice of Contract Termination

In its motion for summary judgment, Defendant argues that the unambiguous language of the termination clause, as contained in the blanket purchase order, allowed Defendant to "terminate the Blanket Purchase Order, in whole or in part, at any time, for any reason, without penalty." (Def.'s Mot. at 6.)  Therefore, Defendant states, "it had no contractual obligation to purchase any inventory in the supply chain, and it had no contractual obligation to provide advanced notice to [Plaintiff]." (*Id.*)  Plaintiff does not dispute the express language of the termination clause, nor does it appear that Plaintiff disputes the claim that Defendant could terminate the contract at any time, for any reason.[4]  (Pl.'s Resp. at xiii.)  Plaintiff does argue, however, that reasonable notification was required before termination and, because Defendant did not provide such notification, the termination was invalid.

In a diversity action such as this, the court applies the long-standing *Erie* doctrine, which requires that the court apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located.  *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007)

---

[4]  Plaintiff argues, in passing, that there was an oral promise from Defendant, after shipments had begun, to purchase all quantities listed in the forecasts.  (Pl.'s Resp., Ex. B at 5, ¶ 13.)  Any such promise came after the contract had been accepted by performance, and thus was untimely to modify the contract's terms.  Further, placing aside the negligible quantities included in the blanket purchase order for quality control purposes, the common trade usage of such an instrument expressly contemplates the lack of a quantity amount, to be later supplied by a release order.  *Detroit Radiant Prod. Co.*, 473 F.3d at 631.  Therefore, in a situation such as this, where the instrument is, in effect, totally silent as to the quantity, parol evidence, such as an oral promise to purchase certain quantities, cannot be used to supply the missing term.  *Acemo, Inc. v. Olympic Steel Lafayette, Inc.*, No. 256638, 2005 WL 2810716, *4 (Mich. Ct. App. Oct. 27, 2005) (quoting *In re Estate of Frost*, 344 N.W.2d 331, 333 (Mich. Ct. App. 1984)).

(citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)).  Michigan law, applicable here, has adopted the Uniform Commercial Code ("UCC") for contracts involving the sales of goods.  Mich. Comp. Laws § 440.2102; *Aaron E. Levine & Co., Inc. v. Calkraft Paper Co.*, 429 F. Supp. 1039, 1048 (E.D. Mich. 1976).  Of particular importance, Michigan's adoption of the UCC dictates that:

> (3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

Mich. Comp. Laws § 440.2309.  Defendant points to the provision and argues that the blanket purchase order, by omitting a notice term, in effect dispensed with notice, was not procedurally or substantively unconscionable, and thus obviated any contractual requirement for advance notice of termination.  (Def.'s Mot. at 10-15.)  Plaintiff responds that, apart from any unconscionability, the notice term was not "dispensed" through omission and thus the UCC "fills the gap" to require reasonable notification.  (Pl.'s Resp. at 8-15.)

In this summary judgment posture, it is undisputed that a term for "notice" is undefined in the contract, which provided only that Defendant could "terminate the Blanket Purchase Order, in whole or in part, at any time, for any reason, without penalty." (Def.'s Mot. at 6.)  Thus, the initial question is whether the omission of a notice clause operates as "dispensing with notification" under Mich. Comp. Laws § 440.2309, or whether the omission requires  Mich. Comp. Laws § 440.2309 to "fill the gap" and require "reasonable notification."

10

In common usage, to "dispense with" a term typically means something different than to "omit" a term. The former implies an active effort to contract around a requirement, while the later implies the situation where the requirement has been, either by ignorance or design, ignored. Indeed, those cases in other jurisdictions which have upheld termination clauses have done so when the reasonable notice requirement has been actively "dispensed" through a redefinition of the term of notice required. *See, e.g.*, *Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am.*, 768 F. Supp. 1174, 1180, n. 5 (E.D. La. 1991) (collecting cases on New York's and Louisiana's interpretations of the UCC notice provision, and holding that "New York law generally upholds contractual clauses that permit either party to cancel the contract with or without cause upon notice."); *Div. of the Triple Serv., Inc. v. Mobil Oil Corp.*, 304 N.Y.S.2d 191, 194 (N.Y. Sup. Ct. 1969) (upholding termination clause that provided for "notice from either party to the other, given not less than 90 days prior to such termination."); *Sinkoff Beverage Co. v. Jos. Schlitz Brewing Co.*, 273 N.Y.S.2d 364, 365 (N.Y. Sup. Ct. 1966) (upholding termination clause that allowed for termination "at any time without cause or notice by either party.") Those cases, however, do not provide direction where notice is not explicitly mentioned in the contract.

Defendant cites to a single Michigan case as support for its position that the omission of a notice requirement permits termination at any time, without notice. (Def.'s Mot. at 13.) That case, however, concerned a purchase order for a service contract, and does not interpret, nor even mention, the Michigan application of the UCC. *Chrysler Corp. v. Diclemente Siegel Eng'g, Inc.*, No. 184700, 1996 WL 33347850 (Mich. Ct. App. 1996) (per curiam). Defendant also cites a bankruptcy court's interpretation of

11

the Ohio UCC, in which a contract which permitted "terminat[ion] . . . any time without

prior notice" was upheld. *In re Penn. Tire Co.*, 26 B.R. 663, 670 (Bankr. N.D. Ohio

1982) (noting that "the . . . language suggests, at least, that the parties had agreed that

'reasonable notice' pursuant to [Ohio's UCC] meant no notice."). But that is a case

where the parties expressly agreed to dispense with notification by not requiring notice

at all.

The court is faced with a different type of situation– one in which "notice" is not

explicitly mentioned. The contract does, however, include a temporal aspect, allowing

for termination "at any time." (Def.'s Mot. at 6.) If "dispensing" with a notice provision

can be done by providing for "no notice," *In re Penn Tire*, 26 B.R. at 670, then it could

be argued that allowing for termination at "any time," means the same thing. Put

another way, if notice were required, but termination could be done "at any time," then

the notice for termination could be done at any time, or contemporaneous with the

termination. In either case, at the summary judgment stage, conclusively determining

whether notice was "dispensed with" requires further factual development.

### IV. Michigan UCC Application to Fill Gaps

If the court were to determine that notice had not been "dispensed with," then the

Michigan UCC would operates as a set of default rules and, where the parties omitted

certain terms, fill the "gaps." *See Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503,

507 (6th Cir. 2006) (applying Michigan's UCC to hold that "[t]he contract would thus

consist of the terms upon which the parties agreed and any UCC gap fillers."); *Rowe v.*

*Montgomery Ward & Co., Inc.*, 473 N.W.2d 268, 288 n.13 (Mich. 1991) (Boyle, J.,

concurring) (in wrongful discharge context, noting that "the Court would not be

12

precluded from resorting to 'gap fillers' analogous to those contemplated under the UCC

to supply an omitted term or to resolve an ambiguity.").  Here, if the court were to find

that the parties created a gap as to the notice required prior to termination, the Michigan

UCC provision that would supply the missing term dictates that:

> (3) Termination of a contract by one party except on the happening of an agreed
> event requires that reasonable notification be received by the other party and an
> agreement dispensing with notification is invalid if its operation would be
> unconscionable.

Mich. Comp. Laws § 440.2309.  Thus, for either party to terminate the blanket purchase

order, the UCC would fill the gap and require that "reasonable notification be received

by the other party."  *See also Coburn Supply Co., Inc. v. Kohler Co.*, 342 F.3d 372, 375-

76 (5th Cir. 2003) (where "[n]o contractual term expressly control[led] the issue of

notice," holding that the Texas UCC required the "gap filler" provision to imply

"reasonable" notice.)  Therefore, if upon further factual development, the court were to

find notice had not been properly dispensed with, it would need to turn to the issue of

the amount of time, pre-termination, that was "reasonable."

### V.  "Reasonable Notification"

Under the Michigan UCC, "what is a 'reasonable time' depends upon 'the nature,

purpose and circumstances' of the action."  *North Am. Steel Corp. v. Siderius, Inc.*, 254

N.W.2d 899, 905 (Mich. Ct. App. 1977) (quoting Mich. Comp. Laws § 440.1204(2)).

Because of the fact-intensive inquiry into the nature, purpose, and circumstances of the

action, reasonableness is normally a question for the trier of fact.  *Barron v. Edwards*,

206 N.W.2d 508, 510 (Mich. Ct. App. 1973); *see also St. Ansgar Mills, Inc. v. Streit*, 613

N.W.2d 289, 295-96 (Iowa 2000) (collecting cases, from numerous jurisdictions, holding

13

that the determination of reasonableness under the UCC is a factual question inappropriate for summary judgment.)  There is no dispute that Defendant provided notice, but that the notice provided was contemporaneous with its termination of the contract.  Plaintiff argues that day-of notice is unreasonable as a matter of law.  (Pl.'s Resp. at 12.)  But Defendant's day-of notice[5] of termination may indeed, in light of the nature of the parties' industry and the circumstances of industry-standard terminations, prove to be reasonable.  The reasonableness of the notice cannot be determined without further development of facts, and is therefore inappropriate for summary judgment.  *St. Ansgar Mills*, 613 N.W.2d at 296-96.  In so holding, the court cannot evaluate the balance of Defendant's summary judgment claim – i.e. whether it did or did not agree to compensate Plaintiff for any supply-chain remainder after termination – because the court has determined that the validity of the termination itself, by virtue of day-of notice, is inappropriate for resolution on summary judgment.

## VI.  CONCLUSION

In sum, the court finds that, in this summary judgment posture, a valid contract existed between the parties in the form of a blanket purchase order, and that the contract did not contain any explicit discussion of the notice required in the event of

---

[5]  Defendant argues, via a footnote, that, if reasonable notice was required, "the notice [Plaintiff] received was two months," because "in January 2007, [Defendant] issued its last release for product . . . Termination did not occur until March 2007."  (Def.'s Reply at 8 n. 3.)  The argument is without merit.  Using a blanket purchase order, Defendant was obligated only to buy the product it "released," which it did when its manufacturing needs required.  By the very nature of the arrangement, there could be times, perhaps exceeding two months, when Defendant would not issue a release.  The mere lack of a release cannot be assumed to equal notice of termination, or any pause in releases under a blanket purchase order could terminate the instrument, whether intended or not.

14

termination.  The lack of explicit mention, however, may or may not turn out to be, upon

further factual development, sufficient to "dispense" with notice under the UCC.  If

insufficient, the Michigan UCC's "gap filling" provision provides that "reasonable notice"

is required, which depends upon the nature, purpose and circumstances of these

parties' interactions and industry custom.  Because the amount of time required for

notice to be reasonable will also require further factual development, it is inappropriate

for resolution on summary judgment.  Accordingly,

     IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 16] is

DENIED.

                                 s/Robert H. Cleland
                                 ROBERT H. CLELAND
                                 UNITED STATES DISTRICT JUDGE

Dated:  July 29, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 29, 2009, by electronic and/or ordinary mail.

                                 s/Lisa Wagner
                                 Case Manager and Deputy Clerk
                                 (313) 234-5522